**THOMAS O'CONNOR & COMPANY, INC., Plaintiff,**

v.

**INSURANCE COMPANY OF NORTH AMERICA, Defendant.**

**Civ. A. No. 88–1638–C.**

United States District Court, D. Massachusetts.

Oct. 12, 1988.

---

Steven J. Comen, Hinckley, Allen, Snyder & Comen, Boston, Mass., for plaintiff.

James J. Myers, Robert J. Kaler, Gadsby & Hannah, Boston, Mass., for defendant.

## MEMORANDUM

CAFFREY, Senior District Judge.

The plaintiff subcontractor, Thomas O'Connor & Co., Inc. ("O'Connor"), has brought this action against Insurance Company of North America ("INA") for payment under a surety bond. INA is the payment bond surety of Distral Energy Corporation ("Distral"), the general contractor. This case is before the Court on defendant's motion to stay proceedings pending arbitration between O'Connor and Distral. Defendant requests a stay of this Court's proceedings pursuant to section 3 of the United States Arbitration Act, 9 U.S.C. § 1 *et seq.*, and the Court's inherent powers to control its docket. After a hearing and consideration of the pleadings, and for the reasons discussed below, this Court rules that defendant's motion to stay proceedings pending arbitration should be allowed.

In February of 1986, Distral, along with certain other general contractors, entered into a contract ("the Warren Contract") with Warren Energy Resource Co., Limited Partnership. The contract provided for construction work to be performed on the Warren County New Jersey Resource Recovery Project ("the Resource Recovery Project") in Warren County, New Jersey. The Warren Contract included an arbitration clause covering all "claims or disputes" between the parties arising in connection with performance of work under the contract.[1]

---

1. The arbitration clause is contained in Article 26 of the Warren Contract. Article 26 provides:

All claims or disputes between the Company and Vendor occurring during or after perform-

The Warren Contract also required Distral to secure a payment bond. Pursuant to that contract provision, Distral executed a payment bond with INA, the defendant in the present case. INA bound itself to pay all persons furnishing "labor, services, materials or supplies" under the Warren Contract in the event Distral failed to make timely payment. The payment bond also states that the Warren Contract is by reference made part of the bond.

In a subcontract ("the Subcontract") dated March 10, 1987, between Distral and O'Connor, O'Connor agreed to install two boiler units and two external economizer units as part of the Resource Recovery Project. The Subcontract incorporates by reference certain general conditions listed in the Warren Contract, including the arbitration clause and the payment bond provision.

O'Connor now seeks to recover $1,108,402.52 under the INA payment bond for "labor, services, materials, and supplies for use in the prosecution of the work" performed under the Subcontract (*See* Complaint ¶¶ 3–5). The plaintiff has concurrently filed a demand for arbitration against Distral, pursuant to the arbitration clause. O'Connor has attempted, therefore, to bring its claim for payment regarding work performed on the Resource Recovery Project in two different forums.

█ It is clear that INA is entitled to rely on the arbitration clause included in the Warren Contract. The payment bond executed by Distral with INA as surety explicitly incorporates by reference the Warren Contract. As described earlier, the Warren Contract contains an arbitration clause which states that "all claims or disputes" arising in connection with the performance of work under the agreement "shall be determined by binding arbitra-

tion...." It is also apparent that O'Connor is bound by the arbitration clause, as the Subcontract explicitly incorporates by reference the arbitration provision in the Warren Contract. O'Connor cannot be heard to invoke the protection of the INA payment bond, as incorporated by reference in the Subcontract, while disavowing incorporation of the arbitration clause in the bond as well as the Subcontract. *See, e.g., Exchange Mutual Insurance Co. v. Haskell Co.,* 742 F.2d 274 (6th Cir.1984) (sound approach is to allow arbitration where the surety bond includes by reference the obligation to arbitrate); *J & S Construction Co., Inc. v. Travelers Indemnity Co.,* 520 F.2d 809 (1st Cir.1975) (where contract was explicitly incorporated by reference in the surety bond, the surety, although not a party to the construction contract, could assert contractual right under arbitration clause). *Cf. Cost Brothers, Inc. v. Travelers Indemnity Co.,* 760 F.2d 58 (3rd Cir.1985) (surety may not compel subcontractor to submit its dispute to arbitration where surety is not a party to the agreement to arbitrate and the bond does not incorporate by reference the underlying agreement).

█ Section 3 of the United States Arbitration Act ("the Act") requires a court in which suit has been brought "upon any issue referable to arbitration under an agreement in writing for such arbitration" to stay the action pending arbitration once the court is satisfied that the issue is arbitrable under the agreement. 9 U.S.C. § 3. 13 B Wright, Miller & Cooper, *Federal Practice & Procedure* § 3569, p. 169. A motion to stay proceedings will not be granted pursuant to § 3 unless the contract in question evidences a transaction involving interstate commerce. *Bernhardt v. Polygraphic Co. of America, Inc.,* 350 U.S. 198, 201–02, 76 S.Ct. 273, 275–76, 100 L.Ed.

ance of the Work or after termination of the Work or this Contract which have not been resolved to the satisfaction of either the Company or Vendor by the decision of the Construction Manager or the Engineer shall be finally determined by binding arbitration in accordance with the provisions of the Construction Industry Rules of the American Arbitration Association by arbitrators in accordance with said

Rules. The parties acknowledge that this Contract evidences a transaction involving commerce and that the agreement to arbitrate is governed by and enforceable under 9 U.S.Code, Section 1, *et seq.* The place of arbitration shall be Birmingham, Alabama, U.S.A. Vendor shall not discontinue, hinder or delay the Work in any way during the pendency of arbitration.

199 (1956); *Warren Bros. Co. v. Cardi Corp.*, 471 F.2d 1304, 1307 n. 2 (1st Cir. 1973). Furthermore, the party applying for the stay must not be in default in the arbitration proceedings, or the stay will be denied. *New Process Steel Corp. v. Titan Indus. Corp.*, 555 F.Supp. 1018, 1021 (S.D. Tex.1983).

■ In the present case, the conditions necessary for a stay of this Court's proceedings, pursuant to § 3 of the Act, are satisfied. First, there exists a written agreement, binding on both parties to this action, containing an arbitration clause. The arbitration clause is incorporated by reference in both the Subcontract between O'Connor and Distral and the payment bond binding INA as Distral's surety. Second, this Court is satisfied that the central issue in this action, namely, O'Connor's right to payment for work performed under the Subcontract, is arbitrable under the agreement. The arbitration clause covers "all claims or disputes" arising between the parties occurring in connection with performance of work under the Warren Contract. Clearly, O'Connor's claim for payment for work performed on the Resource Recovery Project is covered by the broad language contained in the arbitration clause. *See, e.g., New Process Steel Corp. v. Titan Indus. Corp.*, 555 F.Supp. at 1021 (in determining whether an issue is arbitrable under the agreement, the court will look to language of the arbitration clause).

■ Third, the agreement in question does evidence a transaction involving interstate commerce. The arbitration clause in the Warren Contract expressly provides that the agreement "evidences a transaction involving commerce" and that the clause is "governed by and enforceable under" § 3. The Warren Contract deals with construction work to be performed in New Jersey by Distral, a New York corporation, among other contractors. Apparently, the majority of materials purchased by Distral were ordered and shipped from outside of New Jersey. The Subcontract also involves interstate commerce, as the plaintiff subcontractor is a Massachusetts corporation and Distral, the general contractor, is a New York corporation. A number of the plaintiff's laborers apparently were residents of states other than New Jersey, and some of O'Connor's equipment was transported to New Jersey from its Massachusetts facility. Based on this undisputed information, both the Warren Contract and the Subcontract evidence transactions involving interstate commerce sufficient to trigger application of § 3. *Cf. Warren Brothers Co. v. Cardi Corp.*, 471 F.2d at 1307 (where papers before court fail to make reference to interstate commerce, the court must assume that § 3 is inapplicable).

The final condition necessary before a court will grant a stay of proceedings under § 3 is also satisfied in this case. INA, as moving party, is not in default under the arbitration proceedings. Based on the above, INA's motion for a stay of this Court's proceedings pending arbitration between O'Connor and Distral should be allowed, pursuant to § 3 of the Act.[2] This result is consistent with the policy favoring arbitration. *United Steel Workers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 596, 80 S.Ct. 1358, 1360, 4 L.Ed.2d 1424 (1960); *Hilti, Inc. v. Oldach*, 392 F.2d 368, 372 (1st Cir.1968).

■ The plaintiff argues that this Court should allow limited discovery here, notwithstanding a stay of proceedings pending arbitration.[3] Plaintiff's arguments in support of allowing limited discovery in this case, however, fail to persuade the Court that such discovery would be appropriate in conjunction with the arbitration proceed-

---

2. Given the Court's determination that INA is entitled to a stay of proceedings under § 3 of the Act, it is unnecessary to address INA's request for a stay pursuant to this Court's inherent power to control its own docket. *See Landis v. North American Co.*, 299 U.S. 248, 254–55, 57 S.Ct. 163, 165–66, 81 L.Ed. 153 (1936).

3. O'Connor argues that the Court should allow limited discovery here so that O'Connor can establish the existence of an undisputed amount owed by Distral, and hence INA as surety. O'Connor's next step, after establishing this allegedly undisputed amount would apparently be to file a motion for summary judgment against INA regarding that portion of its claim for work performed under the Subcontract.

ings to be conducted in Birmingham, Alabama. It is well established that discovery regarding matters to be arbitrated is generally denied, absent exceptional circumstances. *See* 7 *Moore's Federal Practice* ¶ 81.05[7] at 58–59. Plaintiff has not established any special circumstances sufficient to justify court ordered discovery in this case. *Cf. Ferro Union Corp. v. S.S. Ionic Coast,* 43 F.R.D. 11 (S.D.Tex.1967) (special circumstances established where foreign vessel was about to leave the country). Allowing such discovery here, even on a limited basis, would essentially provide the plaintiff with two forums to hear its single claim, and would thereby frustrate the purposes of the Act:

> Discovery under direction of the court, rather than under control of the arbitrator, is improper where the court has ordered the parties to arbitrate their dispute in accordance with their contract because to order discovery under court supervision would leave the parties with one foot in the District Court and the other in the arbitrator's office.

3 *Federal Procedure,* L.Ed. § 4:10, n. 75 (citation omitted). O'Connor should be held to its agreement with Distral to submit all claims arising under the Subcontract to arbitration, as to all proceedings in this Court, including any and all discovery.

Accordingly, defendant's motion to stay proceedings pending arbitration should be allowed.

Order accordingly.